347 P.2d 1098

Clyde **KILLINGSWORTH,** as Superintendent of the Motor Vehicle Division, Arizona State Highway Department, Defendant,

Arizona Automobile Dealers Association, a corporation, Intervener, Appellants,

v.

**WEST WAY MOTORS, INC.,** an Arizona corporation, Appellee.

No. 6518.

Supreme Court of Arizona.

Dec. 30, 1959.

Robert Morrison, Atty. Gen., and Harmon S. Puckett, Asst. Atty. Gen., for Clyde Killingsworth.

Snell & Wilmer, and Perry M. Ling, Phoenix, for Arizona Automobile Dealers Ass'n.

Parker & Muecke, Phoenix, for appellee.

PHELPS, Chief Justice.

This is an appeal from a summary judgment entered by the trial court in favor of plaintiff-appellee against defendant and intervener, appellants. The parties will hereinafter be designated as plaintiff, defendant, and intervener.

The facts are that plaintiff who had been engaged in the used car business in the City of Phoenix for a substantial period of time

prior to October 4, 1956, made application to defendant, the duly appointed, qualified and acting superintendent of the Motor Vehicle Division of the Arizona State Highway Department, for a license as a new motor vehicle dealer under the provisions of A.R.S. §§ 28–303 and 28–1304. The defendant denied said application, and plaintiff, pursuant to A.R.S. § 28–1304, subd. E made application for a hearing which was granted and thereafter defendant again denied said application, and as required by said statute made findings of fact and conclusions of law in his final order denying said application.

Thereupon, plaintiff brought the instant action in the superior court challenging the constitutionality of the statute and the rules and regulations under the provisions of which defendant acted in denying plaintiff's application for said license. After issues were formed intervener obtained permission to intervene as a party defendant and filed its answer and joined with defendant in praying that the order of defendant denying plaintiff's application be affirmed.

Both the intervening defendant and plaintiff thereafter filed motions for summary judgment. Having heard counsel as to the law upon a stipulation that the facts were as alleged in the complaint, and being fully advised in the premises, the court granted plaintiff's motion for summary judgment and denied intervener's motion therefor.

Defendant and intervener prosecute this appeal.

The trial court based its judgment for the plaintiff on the ground that A.R.S. § 28–1301, paragraph 2, and Rules 16 and 17 (General Orders No. 50 and 51) of the Arizona Highway Department, Division of Motor Vehicles, " * * * are of no force and effect insofar as they require that the applicant have 'an established place of business' or be enfranchised or otherwise authorized by any manufacturer of new motor vehicles to sell its new motor vehicles." The court did not expressly state what portion of the Constitution has been violated. In fact, it did not state in its judgment that the Constitution had been violated.

Plaintiff contends that A.R.S. §§ 28–1301, 1302, 1303, 1304 and 1311, and A.R.S. §§ 28–202 and 28–303, and Rules and Regulations Nos. 16 and 17 (General Orders No. 50 and 51) are violative of the provisions of Article 2, Section 13 of the Arizona Constitution, A.R.S., and Section 1 of the Fourteenth Amendment to the Constitution of the United States; and that they further violate Article 4, part 2, section 19, subsection 13, and the due process clause of Article 2, section 4 of the Arizona Constitution.

█ It is our view that there is no merit whatever to the claim that the Legislature was without power to invest the superintendent of the motor vehicle division of the

State Highway Department to make such rules and regulations within and not inconsistent with the language of the statute as he deemed necessary to efficiently discharge those duties, and that A.R.S. § 28-202 is constitutional. Whether Rules 16 and 17 involved herein are in aid of the enforcement of the provisions of such statute will be hereinafter discussed.

We are also of the view that A.R.S. § 28-303 prescribing the information to be contained in an application for a certificate of title to a motor vehicle, trailer or semi-trailer is a proper legislative function in the exercise of the police powers of the state. It is universally conceded by all courts that the Legislature does have such power even over a legitimate business if it is of such a nature that it is susceptible to abuse so long as such legislation is reasonable and not arbitrary and bears a reasonable relation to the purpose of its enactment. The measure of its police powers is always commensurate with public necessity. Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450. Because of the magnitude of the motor vehicle industry and the opportunity for the perpetration of fraud in the transfer of title to both new and used cars, we are of the view that said section does not contravene any portion of either the state or federal constitution cited to us.

The provisions of A.R.S. Paragraph 7 of Subsection A, § 28-303 and Subsection B, § 28-303, supra, insofar as applicable to the instant case provide that the application for a certificate of title shall contain the following:

"7. If the application is for a certificate of title to a new vehicle, *the date of sale by the manufacturer or dealer to the person first operating the vehicle.* (Emphasis ours)

\* \* \* \* \* \*

"B. The application for a certificate of title to a new vehicle shall be accompanied by a certificate from the manufacturer showing the date of sale to the dealer or person first receiving it from the manufacturer, the name of the dealer or person and a description sufficient to identify the vehicle, and certifying that the vehicle was new when sold. If sold through a dealer, the dealer shall certify that the vehicle was new when sold to the applicant."

The above requirements are not only reasonable but they meet an imperative need of the public therefor.

The provisions of A.R.S. § 28-1301 is devoted exclusively to definitions of terms and present a more serious question. Section 28-1301 reads as follows:

"2. 'Established place of business' means a permanent enclosed building or structure owned either in fee or leased with sufficient space to display two or more motor vehicles of a kind and type which the dealer is licensed

to sell and which is devoted principally to the use of a motor vehicle dealer in the conduct of the business of the dealer. In the case of a used motor vehicle dealer, trailer dealer or semi-trailer dealer an established place of business need not be a permanent building or structure or part thereof, but may be a vacant lot or part thereof, but the term shall not mean or include a residence, tent, temporary stand or temporary quarters or permanent quarters occupied pursuant to a temporary arrangement. In the case of a motor dealer or wrecker an established place of business means a permanent site or location at which the business of a motor dealer or wrecker is or will be conducted."

\* \* \* \* \* \*

"5. 'Motor vehicle dealer' means a new motor vehicle dealer or a used motor vehicle dealer.

"6. 'New motor vehicle dealer' means a person who buys, sells, exchanges or offers or attempts to negotiate a sale or exchange of any interest in, or who is engaged in the business of selling, new motor vehicles or used motor vehicles taken in trade on new motor vehicles.

\* \* \* \* \* \*

"8. 'Used motor vehicle dealer' means a person, other than a new mo-

tor vehicle dealer, who buys, sells, exchanges or offers or attempts to negotiate a sale or exchange of any interest in, or who is engaged in the business of selling, used motor vehicles."

It will be observed that A.R.S. § 28–1301, paragraph 2, defines an established place of business as it applies to the sale of new cars to mean

"\* \* \* a permanent enclosed building or structure owned either in fee or leased with sufficient space to display two or more motor vehicles of a kind and type which the dealer is licensed to sell and which is devoted principally to the use of a motor vehicle dealer in the conduct of the business of the dealer. \* \* \*"

whereas, an established place of business as it applies to a used car dealer need not be a permanent building or structure but may be a vacant lot or part thereof without any requirements of ownership or of an interest in said lot.

■ As we stated above legislative regulation in the exercise of the police power must have some relation to the purpose sought to be achieved and it must result from public necessity. Appellants claim in their briefs that the purpose of the above requirement was to insure permanency and stability in the business of selling new cars. This, they claim would enable those who purchase cars from such

dealers to redress any wrong they may have suffered at the hands of such dealers as it would have the effect of eliminating the fly-by-night dealer. Does the requirement that the new car dealer shall own in fee or lease a building with space sufficient to display two or more motor vehicles of a kind or type he is licensed to sell, add to his permanency or his stability or reliability any more than if he had no room at all for a display of his cars, but did own in fee the lot of a value of five, ten, twenty or fifty thousand dollars on which he conducted his business? If it does not, then there is no reasonable relationship between the requirement that a dealer must have a building on the premises containing a display room for at least two new cars of the type he is selling and the alleged purpose of the legislation. If it bears no relation to the purpose sought to be achieved, the restriction is arbitrary, discriminatory, and unlawful.

Would the mere fact that such a building was on the premises if leased from month to month evidence greater stability, reliability and permanency in the business of the dealer than the ownership in fee of a valuable lot from which he conducted his business as a dealer? If not, the requirement for a building and display room is unreasonable. It fills no public need and is not within the police power of the legislature to enact it.

If the above legislation was enacted to prevent fly-by-night dealers from perpetrating fraud upon local citizens purchasing cars from new car dealers, is there any valid reason for failing to impose the same requirements upon a dealer engaged in the business of buying and selling used motor vehicles? The opportunity of the used car dealer to defraud his customers certainly is as great, and according to our way of thinking, much greater than that of the new car dealer because the number of used cars sold is much greater than that of new cars, and many of the purchasers of used cars are without business experience and are more apt to be imposed upon by the fly-by-night dealer than the businessman who purchases a new car annually.

Whether its purpose was to prevent the defrauding of car purchasers by fly-by-night motor vehicle dealers or not the requirement that the new car dealer shall conduct his business from a building with a display room for at least two cars is arbitrary, unreasonable and discriminatory and violates the equal protection clause of both the 14th Amendment to the federal constitution, and Article 2, Section 13 of the state constitution.

■■ We must construe appellee's failure to do more in its brief than to refer to A.R.S. §§ 28–1302, 1303 and 1311 to constitute an intention of its counsel to aban-

don their claim that these sections are unconstitutional. We therefore decline to consider them. Section 28–1304, supra, we believe to be within the legislative function under the state police power.

Rules 16 and 17 appear to us to undertake to impose requirements upon a new motor vehicle dealer entirely beyond the scope of the statute under which the superintendent functions instead of being in aid of the enforcement of said legislative act. Rules 16 and 17 read as follows:

"Rule No. 16 * * * when an application for an Arizona certificate of title is supported by a manufacturer's certificate of origin the application shall be handled as follows:

\* \* \* \* \* \*

"3. When the manufacturer's certificate shows transfer of the vehicle by the manufacturer to a dealer (A. R.S. Section 28–303, formerly 66–205), the Division will issue certificate of title only upon assignment to the applicant of the manufacturer's certificate by a licensed Arizona New Motor Vehicle Dealer, authorized to sell the make of vehicle for which application for title is being made."

"Rule No. 17 * * * it is ordered that applicants for a license as a new motor vehicle dealer shall submit satisfactory proof that he is a duly authorized distributor or dealer for a

manufacturer of the make of vehicle which his application states he will sell or offer for sale."

It is true that A.R.S. § 28–303, supra, requires that a certificate of title from the manufacturer shall accompany an application for a certificate of title for a new motor vehicle showing the date of sale to the dealer or person first receiving it from the manufacturer, as well as the name of the dealer or person first receiving it; and a description of the vehicle sufficient to identify the vehicle, and that it was new when sold and if sold through a dealer that it was new when sold to the applicant, but nowhere does the statute require that the dealer shall be a licensed Arizona new motor vehicle dealer or that he shall submit proof of that fact, or that such dealer must be enfranchised by the manufacturer to sell the car or cars manufactured by them.

It has been held in at least four jurisdictions in well-reasoned opinions that even an act of the legislature imposing such a restriction upon the right of a new motor vehicle dealer to engage in business as such is unconstitutional. Nelsen v. Tilley, 137 Neb. 327, 289 N.W. 388, 392, 126 A.L.R. 729, involved the constitutionality of a statute which provided that:

"This license [Motor Vehicle Dealer's License] shall permit the licensee to engage in the business of selling or exchanging new and used motor

vehicles or both: Provided, such license as it pertains to the sale or exchange of new motor vehicles shall be limited to such new motor vehicles as the licensee discloses in his application he is enfranchised to sell. This form of license shall permit one person named thereon to act as a motor vehicle salesman."

The Nebraska court held the provisions limiting the dealer to the sale of new motor vehicles to such new motor vehicles as the licensee discloses in his application he is enfranchised (by the manufacturer) to sell " * * * creates a monopoly in the persons enfranchised by the manufacturers of motor vehicles and thereby contravenes the Fourteenth Amendment to the Constitution of the United States, and sections 1, 3, 16 and 25, Art. 1, of the Constitution of Nebraska. * * *" It continued by saying that:

" * * * The effect would be that the business of selling new cars would be monopolized by dealers enfranchised by the manufacturers. It constitutes an attempt to create a monopoly, a power that the legislature does not possess. * * *"

In Joyner v. Centre Motor Co., 192 Va. 627, 66 S.E.2d 469, 470, the Virginia legislature passed a law which provided insofar as pertinent here that:

" * * * It is unlawful for any motor vehicle dealer to sell or offer for sale any new motor vehicle unless he shall have a written contract or franchise with the manufacturer or authorized distributor or dealer of that particular make of new motor vehicle."

The Commissioner of the Division of Motor Vehicles of Virginia refused to issue to the Centre Motor Co. a license that would permit it to sell new motor vehicles.

The Virginia trial court found that the statute violated several provisions of the state constitution but the Supreme Court limited its consideration to the constitutional provision providing that the general assembly should not enact any law local, special or private *granting to any private corporation, association or individual any special or exclusive right, privilege or immunity*. The court said that:

"Upon its face this legislation gives special and exclusive privileges to one set or class of dealers which it denies to others who are equally fit and capable of dealing in the subject matter involved. Those fortunate enough to hold a contract franchise are allowed to sell new cars, but those holding no contract franchise are restricted and burdened in their undertaking by being prohibited from selling cars that they may have legally acquired. * *

"This legislation prevents only the used car dealer from selling such a car by forbidding him to sell any new car, while it leaves the few enfranchised dealers free to practice the frauds sought to be eliminated. The vice in and resultant unconstitutionality of this legislation is that it presupposes that unenfranchised dealers constitute a class who alone are capable of fraudulent and sharp practice, and that dealers who hold franchises are immune from and incapable of committing the wrongs and dishonest acts sought to be guarded against."

In Ohio Motor Vehicle Dealers' & Salesmen's Licensing Board v. Memphis Auto Sales, 103 Ohio App. 347, 142 N.E.2d 268, 270, decided May 8, 1957, which involves the constitutionality of an Ohio Act relating to the licensing of dealers engaged in the business of selling motor vehicles at retail, and Rule designated as No. 9 promulgated under the provisions of the Act. This rule provided that " * * * any dealer that has a manufacturer's statement of origin for a car is selling a new car. * * *" Memphis Auto Sales did not have a contract with a manufacturer or distributor of Ford cars and consequently did not have a statement of origin for the 1955 Ford cars it displayed for sale. It was cited to appear before the Board to determine if it had violated Rule 9, supra. It was found that it had violated that rule and that the displaying for sale of 1955 Ford cars with manufacturer's statement of origin without having a franchise from said manufacturer was in violation of the dealers and salesmen license Act of Ohio, and suspended its license to conduct such business for 30 days. The Court of Appeals in a very lengthy opinion quoted from the Nebraska and Virginia cases, supra, and from Signore v. Rizzolo, 9 N.J.Super. 539, 75 A. 2d 757, supra, to the same effect. The Ohio court said:

" * * * We agree with the trial judge that 'the gist of this statute is to implement the terms of the franchise and to police the franchise for the manufacturers. This is done under the guise of public good. The selling of new cars may be regulated; the public may be protected from fraud; but to provide that only those individuals whom a manufacturer may choose, and on such terms as he may choose, can sell new cars is discriminatory, and certainly has no connection with the general welfare of the public.' "

The court then proceeded to hold that Rule No. 9

" * * * is invalid because (1) it constitutes an unlawful prohibition upon the right of a person to follow a lawful industrial pursuit; (2) it creates a monopoly by way of a special privilege in favor of the persons en-

franchised by the manufacturers of motor vehicles; (3) it is not general in its nature and as such is not uniform and impartial in its operation; and (4) it is an unlawful delegation of legislative power in favor of private concerns and manufacturers of motor vehicles who are empowered to select a favored few for enfranchisement, for all of which reasons subsection (D) of such section [Section 4517.06, Revised Code] is invalid and violative of the Fourteenth Amendment to the Constitution of the United States and of the Constitution of the State of Ohio."

There are cases involving statutes similar to ours which have been enforced. In A B C Auto Sales v. Marcus, 255 Wis. 325, 38 N.W.2d 708, 710, the Supreme Court held it was error for the auto commissioner to deny an application for a dealer's license upon the ground that he " * * * neither 'owns nor leases a permanent building wherein there are facilities to display automobiles' * * *'" but did hold it constitutional upon the ground that it went further and provided that such a certificate or license should issue " * * * 'only if he owns or leases a permanent building wherein there are facilities to display and repair functional and nonfunctional parts of automobiles.' * * *'" This sustains the Nebraska, Virginia, Ohio and New Jersey decisions. We find no decisions dealing with the sub-ject even remotely sustaining defendant's and intervener's position involving a statute like ours.

We find no provision in the Motor Vehicle Act of Arizona to the effect that if any portion thereof is found to be unconstitutional it will not affect the validity of the remainder thereof but we are satisfied that the portion of the Act we hold to be unconstitutional can be separated from other portions thereof, and the latter enforced independently of the former; and we further believe that the portion thereof herein declared to be unconstitutional did not constitute such an inducement to the enactment of other parts of such statute that they would not have been passed without it. If the above is true the portion here ruled upon may be rejected as unconstitutional and the remainder upheld even though incorporated in the same section of the statute. McCune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537.

We therefore hold that the provision of Section 28–1301, paragraph 2, providing that the business of a dealer in new motor vehicles shall be in " * * * a permanent enclosed building or structure owned either in fee or leased with sufficient space to display two or more motor vehicles of a kind and type which the dealer is licensed to sell * * *'" is unreasonable, arbitrary and discriminatory, and bears no reasonable relation to the general

welfare, health, safety or morals of the public and therefore not within the police power of the Legislature. It is violative of both the state and federal constitution as above pointed out.

We further hold that Rules 16 and 17, supra, are not only beyond the pale of the rule making power of the defendant under the provisions of the statute relating to the licensing of motor vehicle dealers, but contravene the due process clause and the equal protection clause of the 14th amendment to the Constitution of the United States, and Article 2, Section 13 of the Constitution of the State of Arizona. Therefore, the judgment of the trial court is affirmed.

UDALL, JOHNSON, and BERNSTEIN, JJ., concurring.

STRUCKMEYER, Justice (dissenting in part).

I concur with the principal opinion in this case that Rules 16 and 17 are beyond the rule-making power of the Superintendent of Motor Vehicles. I must, however, dissent from the conclusion that the provision of paragraph 2, A.R.S. § 28–1301 relating to new motor vehicle dealers is unconstitutional.

A.R.S. § 28–1304 provides by section A thereof that

"No person shall engage in the business of a motor vehicle dealer, motor dealer or wrecker except from an established place of business, * * *."

The legislature has specified what constitutes an "established place of business" in paragraph 2 of A.R.S. § 28–1301, and distinguished between new motor vehicle dealers, used motor vehicle dealers, and motor dealers or wreckers. The first sentence relates to new motor vehicle dealers:

" 'Established place of business' means a permanent enclosed building or structure owned either in fee or leased with sufficient space to display two or more motor vehicles of a kind and type which the dealer is licensed to sell and which is devoted principally to the use of a motor vehicle dealer in the conduct of the business of the dealer."

The second sentence relates to used motor vehicle dealers:

"In the case of a used motor vehicle dealer, trailer dealer or semi-trailer dealer an established place of business need not be a permanent building or structure or part thereof, but may be a vacant lot or part thereof, but the term shall not mean or include a residence, tent, temporary stand or temporary quarters or permanent quarters occupied pursuant to a temporary arrangement."

The third sentence relates to motor dealers or wreckers:

"In the case of a motor dealer or wrecker an established place of business means a permanent site or location at which the business of a motor dealer or wrecker is or will be conducted."

There can be no doubt as to the inherent right of the state in the exercise of the police power to classify occupations and businesses according to natural and reasonable lines of distinction.

"* * * A principle which none can dispute is that a statute may be allowed to operate unequally between classes if it operates uniformly upon all members of a class, provided the classification is founded upon reason and is not whimsical, capricious, or arbitrary. Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292.

"The cases are virtually unlimited upon the question of what is or is not legitimate classification. In an effort to sustain legislation if possible, the court, disregarding matters of exclusive legislative concern such as the necessity, wisdom, propriety, or expediency of the law and looking only to the constitutional power of the law-making body, will attempt to discover the basis, if any, for a challenged disparity. In looking to the object of the Act, if it is found that there is a difference between the class favored and others not included therein and that such difference bears a natural and reasonable connection with the object of the Act, such Act will not be stricken down. In judging the reasonableness of the foundation for classification, if the court is in doubt as to whether there is or is not a reasonable basis, such doubt will be resolved in favor of the constitutionality of the law. These principles are fundamental." Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604, 606-607.

This classification should be held within the legitimate exercise of the police power of the state and legislature unless it plainly appears that it has no reasonable basis, the rule being that intendment is in favor of the constitutionality of a statute. General Electric Co. v. Telco Supply, Inc., 84 Ariz. 132, 325 P.2d 394.

The differences and distinctions between new motor vehicle dealers and used motor vehicle dealers are so commonly known that it scarcely seems necessary to comment thereon. A few of the more obvious are pointed out as they bear on the ultimate constitutionality of the Act. The new motor vehicle dealer, before being franchised by the manufacturer, is required to establish his financial stability; and thereafter is required to financially contribute to the sales promotion of the maunfacturer's

product. In order to maintain good will, a franchised dealer is required to carry a substantial stock of spare parts and to undertake the repairs and replacements on behalf of the manufacturer on the new car warranty. None of these are, of course, a requisite to the business of a used motor vehicle dealer. The ownership of a few "clunkers" of doubtful vintage is sufficient to put an individual in the business. Little recourse less than outright fraud is to be had against such a dealer, for there the doctrine of caveat emptor truly applies.

A classification founded upon such valid distinctions and differences cannot be unreasonable. Hence, the only remaining question is whether there is an obvious and real connection between the provisions of the law and its avowed purpose. Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450; Atchison, T. & S. F. Ry. Co. v. State, 33 Ariz. 440, 265 P. 602, 58 A.L.R. 563. If the enactment has any reasonable relationship to the end sought, the court will not substitute its judgment for the judgment of the legislature.

The connection between the statute (the first sentence of paragraph 2, § 28–1301) and its obvious purpose to minimize the evils occurring in the retail sales of the automobile industry is real and apparent. Appellant points out the necessity of establishing the permanency and stability of new motor vehicle dealers in order to eliminate or minimize evils of the "fly-by-night" operator who, having no investment of a permanent nature, can escape the responsibilities of a licensed new motor vehicle dealer. The statute tends to eliminate the financially irresponsible who, while contributing nothing to the promotion of sales or good will of the product, unrestrainedly move in and out of business, ultimately destroying the market created by years of effort of the franchised dealer. Such unrestrained practices in destroying markets tend to eliminate the responsible dealers who through large capital investment have made it possible for the public to enjoy a ready supply of parts for repairs and replacement. The statute does not prohibit the unlicensed dealer; nonetheless, it removes the ease with which the irresponsible and the unconscionable can set up business here in an area where the public has a real stake. The capital expenditure by way of ownership or leasehold investment of the type required tends to eliminate the financial advantage of the "fast dollar" and the quick move when sales and good will are exhausted.

That the same requirements are not imposed upon used motor vehicle dealers is wholly aside the point. This is a matter of legislative discretion and of legislative wisdom and expediency. Our only concern as a court is whether the statute acting in the

area in which it purports to embrace tends to reasonably accomplish its avowed purpose. Since it does, I am of the opinion that it is neither arbitrary, unreasonable nor discriminatory and does not violate the equal protection clause of the Fourteenth Amendment of the Constitution of the United States nor Article 2, section 13 of the Constitution of Arizona.