930 P.2d 488

STATE of Arizona, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, IN and FOR the COUNTY OF MARICOPA, The Honorable Kirkby Roseveare, a judge thereof, Respondent Judge,

JV–511263, Real Party in Interest.

No. 1 CA–SA 95–0340.

Court of Appeals of Arizona, Division 1, Department C.

July 23, 1996.

Review Denied Jan. 14, 1997.

Dean W. Trebesch, Maricopa County Public Defender by Susan G. White, Deputy Public Defender, Mesa, for Real Party in Interest.

## OPINION

FIDEL, Presiding Judge.

In this special action we consider whether Arizona Revised Statues Annotated ("A.R.S.") § 8–241(N), which requires the court to order human immunodeficiency virus ("HIV") testing of a juvenile sex offender upon request of the victim, violates the Fourth Amendment's prohibition against unreasonable searches and seizures. We hold that it does not.

## I. BACKGROUND

The juvenile real party in interest was adjudicated delinquent on one count of child molestation. The evidence shows that the juvenile attempted anal intercourse with the victim. Although there was no "significant exposure" to the juvenile's bodily fluids, as that term is defined in A.R.S. § 13–1415,[1] the delinquent act possibly exposed the victim to the juvenile's bodily fluids.

The victim's mother requested that the juvenile be tested for the presence of HIV pursuant to A.R.S. § 8–241(N), which provides:

> On the request of a victim of a delinquent act that may have involved significant exposure as defined in § 13–1415 or that if committed by an adult would be a sexual offense, the prosecuting attorney shall petition the adjudicating court to require that the delinquent child be tested for the presence of the human immunodeficiency virus. If the victim is a child the prosecuting attorney shall file this petition at the request of the victim's parent or guardian. If the act committed against a victim is an act that if committed by an adult would be a sexual offense or the court determines

Richard M. Romley, Maricopa County Attorney by Elizabeth Ortiz, Deputy County Attorney, Mesa, for Petitioner.

1. "Significant exposure" is defined as:
 contact of the victim's ruptured or broken skin or mucous membranes with a person's blood or body fluids, other than tears, saliva or perspiration, of a magnitude that the centers for disease control have epidemiologically demonstrated can result in transmission of the human immunodeficiency virus.
 A.R.S. § 13–1415.

that sufficient evidence exists to indicate that significant exposure occurred, it shall order the department of juvenile corrections or the department of health services to test the child pursuant to § 13–1415. Notwithstanding any law to the contrary, the department of juvenile corrections and the department of health services shall release the test results only to the victim, the delinquent child, the delinquent child's parent or guardian and a minor victim's parent or guardian and shall counsel them regarding the meaning and health implications of the results.

After a hearing, the juvenile court denied the request, finding involuntary HIV testing to be "an unreasonable search under the 4th Amendment" to the U.S. Constitution. The court found that "the information sought as to whether the victim might be subject to the life threatening consequences of HIV can best be determined by medical examination of the victim." The juvenile court based this finding on medical evidence summarized in *In re J.G., N.S., and J.T.*, 283 N.J.Super. 32, 660 A.2d 1274 (Ch. Div.1995), a New Jersey trial court opinion that was reversed after our juvenile court ruled.[2]

## II. JURISDICTION

■ The State challenges the trial court's ruling by petition for special action. The juvenile urges us to decline jurisdiction over the State's petition because the court's order was a "final order" that should have been challenged on direct appeal. We disagree.

■ The final order in a delinquency action is the final dispositional order. *In re Maricopa County Juvenile Action No. J–78151–S*, 119 Ariz. 320, 321, 580 P.2d 781, 782 (App.1978). The Rules of Procedure for the Juvenile Court do not provide for appeals from subsequent orders; such orders are properly attacked by special action. *Id.* Because the issue in this action arose after the final dispositional order, it is properly raised by special action.

■ The juvenile argues in the alternative that the order was directly appealable pursuant to A.R.S. § 13–4032(4), which permits the State to appeal in criminal matters from "[a] ruling on a question of law adverse to the state when the defendant was convicted and appeals from the judgment." Because "an order of the juvenile court ... shall not be deemed a conviction of crime," A.R.S. § 8–207, the juvenile was not "convicted." Nor did the juvenile appeal from the final dispositional order. A.R.S. § 13–4032(4) did not, therefore, offer the State an avenue for direct appeal.

■ We will accept special action jurisdiction in a case that raises "a constitutional issue of first impression and statewide importance" when "there [is] no adequate remedy in any other procedure or forum." *Fairness & Accountability in Insurance Reform v. Greene*, 180 Ariz. 582, 586, 886 P.2d 1338, 1342 (1994). This case raises such an issue.

## III. FOURTH AMENDMENT

The State argues that the juvenile court erred when it found that A.R.S. § 8–241(N) violated the juvenile's Fourth Amendment right to be free from unreasonable searches and seizures. We agree.

■ The involuntary drawing and analysis of blood by the government "infringes an expectation of privacy that society is prepared to recognize as reasonable." *Skinner v. Railway Labor Executives' Assoc.*, 489 U.S. 602, 616, 109 S.Ct. 1402, 1412–13, 103 L.Ed.2d 639 (1989). It is therefore a search subject to Fourth Amendment constraints. *Id.; Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1833–35, 16 L.Ed.2d 908 (1966).

---

2. Relying on expert opinions that testing the juvenile could not help the victim, the New Jersey trial court found that the statute lacked a close and substantial relationship to the state's interest. See *id.* 660 A.2d at 1286. The appellate division reversed, however, finding the statute constitutionally permissible. 289 N.J.Super. 575, 674 A.2d 625 (App.Div.1996). The appellate division refused "to accord conclusory effect to the medical and psychological opinions presented at the evidentiary hearing." *Id.* 674 A.2d at 633. Instead it found that knowledge of the juvenile's HIV status could "ease the victim's anxiety concerning the transmission of disease or ... propel the victim to conscientiously monitor his/her own status." *Id.* at 631–32.

■ The Fourth Amendment, however, proscribes only unreasonable searches. *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1412–13. In most circumstances "a search must be supported ... by a warrant issued upon probable cause," but "neither a warrant nor probable cause ... is an indispensable component of reasonableness in every circumstance." *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989). We consider whether absence of a warrant or probable cause requirement is constitutionally problematic here.

### A. Absence of a Warrant

In *Skinner,* the Supreme Court explained the purposes that the warrant requirement serves:

> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope.... A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case.

489 U.S. at 621–22, 109 S.Ct. at 1415–16.

■ No "warrant" is required for HIV testing under A.R.S. § 8–241(N); that is, the statute does not designate the testing order by that name. Yet by requiring the detached scrutiny of the juvenile court, the statute equals or exceeds the protection provided by a magistrate, and the statute establishes a pre-testing process that satisfies each of the further warrant purposes outlined in *Skinner.* Because a warrant would provide no additional protection to the juvenile's personal privacy, *see Von Raab,* 489 U.S. at 667, 109 S.Ct. at 1391–92, we deem it constitutionally insignificant that the authorizing document is denominated a judicial "order," not a "warrant." *In re Maricopa County Juvenile Action Nos. JV–512600 and JV–512797,* 187 Ariz. 419, 423, 930 P.2d 496, 500 (App.1996) (upholding DNA testing stat-

ute as providing procedural safeguards "more stringent than those required for the issuance of a warrant"). We therefore hold that the absence of a warrant requirement does not render A.R.S. § 8–241(N) unconstitutional.

### B. Probable Cause

■ Nor is the statute rendered unconstitutional by the absence of a probable cause requirement. We first observe that probable-cause discussion is contextually ill-suited to cases such as this. "[T]he probable-cause standard is 'peculiarly related to criminal investigations.'" *Von Raab,* 489 U.S. at 667, 109 S.Ct. at 1392. The purpose of HIV testing under A.R.S. § 8–241(N) is not to obtain evidence for a criminal investigation but to assist the victim after adjudication of guilt. A positive test would not subject the juvenile to either civil or criminal penalties. Further, the "individualized suspicion" requirement of probable-cause analysis is awkward in this context. That the juvenile had sexual contact with the victim is more than a matter of individualized suspicion; it was proven beyond a reasonable doubt. *See JV–512600,* 187 Ariz. at 423, 930 P.2d at 500.

The statute requires no showing of probable cause that the juvenile has been infected with HIV. But any such requirement would defeat the statute's purpose, given the hidden nature of HIV. *Cf. Von Raab,* 489 U.S. at 668, 109 S.Ct. at 1392. When there is a special need, the courts "have not hesitated to balance the governmental and privacy interests to assess the practicality of the ... probable-cause requirement[ ] in the particular context." *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1414. We undertake such "special need" analysis in this case.

Other courts that have addressed the issue of involuntary HIV testing have found that the possibility of HIV infection presents a "special need" of the type identified in *Skinner* and *Von Raab. See, e.g., Johnetta J. v. Municipal Court,* 218 Cal.App.3d 1255, 1279, 267 Cal.Rptr. 666 (1990); *Fosman v. State,* 664 So.2d 1163, 1165 (Fla.Dist.Ct.App.1995); *People v. Adams,* 149 Ill.2d 331, 173 Ill.Dec.

600, 606, 597 N.E.2d 574, 580 (1992); *In re J.G., N.S., and J.T.,* 289 N.J.Super. 575, 674 A.2d 625, 631 (App.Div.1996); *In re Juveniles A, B, C, D, E,* 121 Wash.2d 80, 847 P.2d 455, 459 (1993) (*"In re Juveniles"*). Approaching the issue as those courts have done, we consider the questions (1) whether the government's interests in HIV testing outweigh the juvenile's privacy interests and (2) if so, whether the statute bears a "close and substantial relation" to the government's need. *See Von Raab,* 489 U.S. at 676, 109 S.Ct. at 1396.

Piercing the skin to draw blood and testing the blood for HIV undoubtedly intrudes upon the privacy of a juvenile subject. *See Skinner,* 489 U.S. at 616, 109 S.Ct. at 1412–13. While the test itself may be only minimally physically intrusive, a positive test result would likely be psychologically traumatic, given the absence of a present cure for AIDS; and a juvenile who tests positive for HIV may be subject to "the well-documented gauntlet of discrimination facing infected persons." *In re Juveniles,* 847 P.2d at 460.

▆ Yet juveniles who are adjudicated delinquent enjoy a reduced expectation of privacy. *In re James P.,* 180 Wis.2d 677, 510 N.W.2d 730, 733 (App.1993), *rev. denied by* 515 N.W.2d 715 (Wis.1994); *cf. State v. Montgomery,* 115 Ariz. 583, 584, 566 P.2d 1329, 1330 (1977) (probationers have a lower expectation of privacy than other citizens). Further, the statute limits distribution of the test results to "the victim, the delinquent child, the delinquent child's parent or guardian and a minor victim's parent or guardian." By limiting the dissemination of the juvenile's HIV test results, the statute limits the privacy invasion.

On the other side of the balance, the State has a substantial interest in helping victims of crime. In 1990, the citizens of Arizona adopted a Victims' Bill of Rights as article 2, § 2.1 of the Arizona Constitution. In 1996, our legislature extended the Victims' Bill of Rights to juvenile proceedings. S.B. 1166, 42d Leg., 2d Sess. (1996). Both enactments

demonstrate the importance the public attributes to the State's efforts to help victims of crime. The State advances this general interest when it helps persons potentially exposed to HIV during a sexual assault to obtain HIV test data concerning their assailants.[3] We conclude that the State's interest in assisting victims significantly outweighs the privacy interest of the juvenile.

We next examine whether the statute "bears a close and substantial relation" to the State's goal of assisting victims of sexual crimes. This analytical step requires that we consider certain facts about HIV infection. Although the juvenile court did not hear such evidence, we may draw upon a body of common knowledge to be found in the case law and in governmental publications. *See, e.g., Johnetta J.,* 218 Cal.App.3d at 1263, 1266, 267 Cal.Rptr. 666; *In re J.G., N.S., and J.T.,* 660 A.2d at 1279–83; Occupational Exposure to Bloodborne Pathogens, 56 Fed.Reg. 64004, 64014–15 (1991).

The pertinent facts are these: (1) HIV may be transmitted to a person exposed to the bodily fluids of another person infected with HIV; (2) Not every exposure to HIV will result in infection; and (3) Under current HIV test procedures, there is a "window period" of six months or more before a newly infected person will test positive for HIV antibodies.

These facts lead the parties to dispute whether HIV testing of offenders benefits victims of sexual crimes. Given the window period, a negative test of the offender may not determine whether the victim was exposed to HIV. Similarly, a positive test of the offender may establish the victim's exposure but leave the question of infection unresolved. Because only a test of the victim more than six months after potential exposure can establish the victim's HIV status with relative certainty, some experts regard perpetrator tests as useless. *E.g., In re J.G., N.S., and J.T.,* 660 A.2d at 1282–83.

Other experts, however, conclude that knowledge of the perpetrator's HIV status,

---

**3.** We do not mean, by citing the Victims' Bill of Rights, to hold or suggest that the victim of a sex crime has a constitutional right to receive HIV test data concerning the assailant. We cite the

Victims' Bill of Rights only to demonstrate the State's strong general interest in assisting victims of crime, an interest advanced by A.R.S. § 8–241(N).

though inconclusive, may be helpful to the victim. *E.g., Johnetta J.,* 218 Cal.App.3d at 1266, 267 Cal.Rptr. 666 ("Patients are anxious to know the HIV status of the person with whom they have come into contact. This information is useful for both the treating physician and the patient."). For instance, HIV testing may provide the victim some relief in finding the sex offender HIV negative at the time of testing. It may also assist the victim in taking potential exposure into account in matters "such as changes in diet and exercise, as well as whether it is necessary to take precautions in intimate relationships." *Id.* at 1266, 267 Cal.Rptr. 666. Like other courts that have considered this subject, "we are hesitant to dismiss a victim's desire to know the HIV status of his/her assailant because a psychologist deems such information not in his/her best interest." *In re J.G., N.S., and J.T.,* 674 A.2d at 632.

■ We do not "pass judgment upon the wisdom of legislation." *State v. Leuck,* 107 Ariz. 49, 51, 481 P.2d 842, 844 (1971). To pass constitutional muster, a statute need not provide the best means to the State's end; it need only provide a means that "bears a close and substantial relationship" to a legitimate end. *Von Raab,* 489 U.S. at 676, 109 S.Ct. at 1396. Further, "the courts will acquiesce in the legislative determination of all matters of fact unless it is clearly erroneous, arbitrary and wholly unwarranted." *Edwards v. State Bd. of Barber Examiners,* 72 Ariz. 108, 113, 231 P.2d 450, 452 (1951).

Though the legislature did not include factual findings in A.R.S. § 8–241(N), it obviously deemed perpetrator-testing for HIV potentially useful to the victim.[4] The juvenile court, in concluding otherwise, inappropriately substituted its judgment for that of the legislature. The juvenile court may have correctly concluded that the question "whether the victim might be subject to the life threatening consequences of HIV can *best* be determined by medical examinations of the victim." (Emphasis added.) But the legisla-

ture's adoption of perpetrator testing as a usefully informative measure was neither "clearly erroneous, arbitrary [nor] wholly unwarranted." *Edwards,* 72 Ariz. at 113, 231 P.2d at 452.

■ In summary, on the facts presented in this case, we find that the juvenile offender's privacy interest in resisting HIV testing is substantially outweighed by the government's interest in assisting victims of sexual offenses to discover whether they have been exposed to HIV. We further conclude that A.R.S. § 8–241(N) bears an adequately close and substantial relationship to the goal of helping victims to warrant deference from the courts. Accordingly, we hold that the absence of a probable cause requirement does not violate the Fourth Amendment.

## IV. OVERBREADTH

■ We next consider the juvenile's claim that the statute is unconstitutionally overbroad. We divide this claim into three components, only one of which we reach. First, the juvenile argues that the statute is overbroad unless confined to cases in which there is a "significant exposure" as defined by A.R.S. § 13–1415.[5] That is, the juvenile argues that, unless the statute is so confined, the government cannot demonstrate a "close and substantial" need. We disagree.

The legislature drafted A.R.S. § 8–241(N) to permit testing in a broader range of cases, and we have concluded that testing in the event of potential exposure to the perpetrator's bodily fluids withstands Fourth Amendment scrutiny, even if such exposure does not rise to the defined level of "significant exposure." We therefore reject the suggestion that the statute is overbroad if application is not confined to instances involving "significant exposure," and we decline to limit permissible testing to cases that meet that standard.

■ Second, the juvenile argues that the statute is unconstitutionally overbroad be-

4. Congress likewise regards perpetrator-testing for HIV as potentially beneficial to victims. A.R.S. § 8–241(N) is responsive to a federal mandate that reduces funds available through "drug control and system improvement" grants to states that fail to pass legislation requiring HIV testing at the request of the victim of a "sexual act." *See* 42 U.S.C.A § 3756(f).

5. *See* note 1 *supra.*

cause it permits HIV testing of sexual offenders whose acts could not have exposed a victim to the offender's bodily fluids, and, thus, could not have transmitted HIV.[6] According to this argument, HIV testing of an offender who could not possibly have exposed the victim to the offender's bodily fluids or to HIV lacks any "close and substantial relation" to the governmental goal of helping the victim. *See Von Raab*, 489 U.S. at 676, 109 S.Ct. at 1396. Only when testing advances that goal, the argument continues, can the government justify intruding upon the privacy of the involuntary subject of the test.

 We do not reach this argument in this case because the juvenile lacks standing to raise it. Here, the juvenile attempted anal intercourse with the victim and potentially exposed the victim to his bodily fluids. A party ordinarily lacks standing to challenge a statute on grounds of overbreadth unless the party's conduct falls within the allegedly impermissible reaches of the statute rather than its permissible core. *State v. Buhman*, 181 Ariz. 52, 53, 887 P.2d 582, 583 (App.1994).

 Third, the juvenile argues that the statute is overbroad because it fails to define a time frame within which the victim must request testing. We decline to reach this issue because the juvenile has not claimed, either in the trial court or this court, that the victim's request for testing was untimely. Accordingly, the issue is not ripe for decision here.

## V. CONFLICT WITH A.R.S. § 36–665

The juvenile last argues that, even if testing under A.R.S. § 8–241(N) is constitutionally permissible, A.R.S. § 36–665 prevents disclosure of the juvenile's HIV status to the victim. A.R.S. § 36–665(A) provides:

Notwithstanding any other law, no court or administrative body may issue an order for the disclosure of or a search warrant for confidential communicable disease related

information, except as provided by this section.

Subsection (H) further provides:

An order authorizing disclosure of . . . confidential communicable disease related information shall:

1. Limit disclosure to that information which is necessary to fulfill the purpose for which the order is granted.

2. Limit disclosure to those persons whose need for the information is the basis for the order, and specifically prohibit redisclosure by persons to any other persons, whether or not they are parties to the action.

A person who knowingly discloses information in violation of § 36–665(H) is guilty of a class 3 misdemeanor. A.R.S. § 36–666.

 The juvenile argues that, because disclosure of an offender's test results cannot benefit the victims of sexual offenses, victims are not persons with a "need for the information" within the meaning of 36–665(H). We have rejected the premise for this argument above. The juvenile also argues that "the State would have to prove, by presenting expert medical testimony, that testing of an offender and disclosure of the information *is* necessary." We reject this argument as well. Necessity was determined as a legislative judgment in § 8–241.

 "If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent." *Buhman*, 181 Ariz. at 55, 887 P.2d at 585 (*quoting State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970)). We may readily harmonize A.R.S. §§ 8–241(N) and 36–665. Section 8–241(N) allows a victim to request HIV testing when there has been a potential exposure to the perpetrator's bodily fluids. Upon such a showing, the victim qualifies as one "lawfully entitled to the disclosure" under § 36–665(B)(4). Further, § 8–241(N) limits disclo-

---

**6.** For example, A.R.S. § 8–241(N) would permit involuntary HIV testing of an offender whose only sexual offense was to fondle a female victim's breast. *See* A.R.S. § 8–241(N) (HIV testing may be ordered when "the act committed against a victim is an act that if committed by an adult would be a sexual offense"); A.R.S. § 13–1404

("[a] person commits sexual abuse by intentionally or knowingly engaging in sexual contact"); A.R.S. § 13–1401 (" '[s]exual contact' means any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object").

sure of test results to "the victim, the delinquent child, the delinquent child's parent or guardian and a minor victim's parent or guardian." To harmonize the disclosure restrictions of the two statutes, the court would need only to "specifically prohibit redisclosure" to others. *See* A.R.S. § 36–665(H)(2). To the extent that persons such as spouses, sexual partners, physicians, or mental health professionals, can be identified as having a "need for the information," those persons can be accommodated within the order concerning redisclosure. *Id.*

## VI. CONCLUSION

We find that A.R.S. § 8–241(N), as applied to a case in which the juvenile's acts could have exposed the victim to HIV, allows a search and seizure that does not violate the Fourth Amendment of the U.S. Constitution. We reverse the order finding the statute unconstitutional and remand for further proceedings consistent with this decision.

LANKFORD and SULT, JJ., concur.