[Civil No. 4586. Filed December 4, 1942.]

[131 Pac. (2d) 983.]

THE STATE OF ARIZONA, ex rel. Joe Conway, Attorney General, Plaintiff, v. THE SUPERIOR COURT OF THE STATE OF ARIZONA, within and for Greenlee County and the Honorable T. E. Allyn, Judge of said Court, Defendants.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Plaintiff.

Mr. Bryant W. Jones, County Attorney, for Defendants.

LOCKWOOD, C. J.—This is an original petition for a writ of *mandamus* directing the Honorable T. E. Allyn, judge of the superior court of Greenlee County, to vacate a judgment, sentence and death warrant, and re-sentence the defendant named in such judgment.

The facts on which the proceeding is based are not in dispute and may be stated as follows: One James C. Rawlins was informed against for the crime of murder in the first degree by the county attorney of Greenlee County. He pleaded guilty and on September 15, 1942, the court rendered judgment of guilty, fixed the penalty at death, and executed a death warrant which reads, so far as material, as follows:

"No legal cause being shown by you or appearing to the Court, it is the judgment of the Court that you are guilty of the crime of murder in the first degree of Marilyn Erma Atkins, a human being, committed in the County of Greenlee, State of Arizona, and that you shall, within ten (10) days from the date hereof, be by the Sheriff of Greenlee County, State of Arizona, transferred to the Arizona State Prison at Florence, Arizona, and by said Sheriff delivered to the Superintendent thereof, *and during the week beginning on the 15th day of November, 1942,* and within the walls of said prison at the hands of the said Superintendent thereof, you James C. Rawlins, shall be executed by administering to you lethal gas until you are dead, dead, dead and may God have mercy on your soul." (Italics ours.)

Before the week fixed for the excution as aforesaid, the attorney general filed this proceeding, claiming that the sentence and death warrant were irregular in that they fixed a specified week during which the execution should be carried out instead of a specified day, and that the same was contrary to law. This contention was based upon the provisions of initiated measure No. 306 adopted by the people in the constitutional manner on November 5, 1918. Laws 1919, Initiative and Referendum Measures, p. 17. This measure, so far as material to the present case, reads as follows:

"Sec. 2. When a judgment of death is rendered, a warrant, signed by the judge, and attested by the clerk, under the seal of the Court, must be drawn and delivered to the sheriff. It must state the conviction and judgment, and appoint *a day* on which the judgment is to be executed, which must not be less than sixty nor more than ninety days from the time of judgment, and must direct the sheriff to deliver the defendant within ten days from the time of judgment, to the superintendent of the State prison of this State, for execution." (Italics ours.)

The position of the attorney general may be stated as follows:

(a) Under section 22, of Art. 6, of the Constitution, which reads as follows:

"*(Criminal procedure.)*—The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

all pleadings and proceedings in criminal cases must be specifically provided for by an act of the legislature, or by an initiated measure under the provisions of Art 4, part 1, section 1, subd. 1, which is in the following language:

"*(Initiative and referendum.)—(1)* *(Legislative authority.)* The legislative authority of the state shall

be vested in a legislature, consisting of a senate and a house of representatives, but the people reserve the power to propose laws and amendments to the constitution and to enact or reject such laws and amendments at the polls, independently of the legislature; and they also reserve, for use at their own option, the power to approve or reject at the polls any act, or item, section, or part of any act, of the legislature.''

(b) The people adopted section two of initiative No. 306, *supra,* and under Art. 4, part 1, section 1, subd. 6, which reads as follows:

''*(Veto.)* The veto power of the governor, or the power of the legislature, to repeal or amend shall not extend to initiative or referendum measures approved by a majority vote of the qualified electors.''

such initiated measure can only be repealed or amended in the same manner in which it was adopted.

(c) The provision set forth in section 2 of initiative No. 306, *supra,* which reads:

'' . . . It must state the conviction and judgment, and appoint a day on which the judgment is to be executed, which must not be less than sixty nor more than ninety days from the time of judgment, . . . ''

requires that some specified calendar day certain be set forth for the execution.

(d) Section 44–2304, Arizona Code 1939, under which the death warrant was executed, reads so far as material as follows:

''*Warrant of execution on sentence of death—Time of execution—Duty of sheriff.*—When sentence of death is pronounced the court pronouncing sentence shall immediately commit the defendant to the custody of the sheriff and shall sign and deliver to the sheriff a warrant addressed to the superintendent of the state prison, attested by the clerk under the seal of the court, stating the judgment and sentence and appointing a week, the first day of which shall not be less than sixty (60) days nor more than ninety (90) days from the date on which sentence was pronounced, within which sen-

tence shall be executed and commanding the superintendent to execute the sentence within the week appointed. . . . ''

and is void for two reasons, (1) because it is a rule of court adopted by the supreme court under the provisions of chapter 8 of the regular session of the legislature, 1939, and the court has no power, even when authorized by the legislature, to adopt rules governing criminal pleading and proceedings, and (2) even if it has such power, the initiated measure No. 306, *supra,* and section 44–2304, *supra,* are in conflict, and the former is superior to and supersedes all acts of the legislature or rules of the court which are in conflict therewith.

We consider first the construction of section 22 of Art. 6, *supra,* for if it be true that the language in such section means, as urged by the attorney general, that only the legislature acting directly, or the people acting through an initiative, may regulate in any manner pleadings and proceedings in criminal causes, it would necessarily follow that whenever a court in dealing with a criminal cause permitted any pleading or procedure to be used which was not expressly directed and provided for in a statute, all subsequent proceedings would be illegal.

The whole question turns upon what is meant by the phrase ''shall be as provided by law''. The word ''law'' in its broadest sense is ''the body of principles, standards and rules which the courts of a particular state apply in the decision of controversies brought before them.'' Restatement, Conflict of Laws, sec. 3. Or it is sometimes said to be ''nothing more than rules promulgated by government as a means to an ordered society.'' *Miami Laundry Co.* v. *Florida Dry Cleaning & Laundry Board,* 134 Fla. 1, 183 So. 759, 764, 119 A. L. R. 956.

Under these broad definitions the word "law" includes constitutions, statutes, the common law and the various rules which the courts from time to time necessarily must and do adopt to secure an orderly, definite and consistent administration of justice. On the other hand, the word is frequently used in a restricted sense as meaning an act of the legislature only. There can be no absolute test laid down as to when the one meaning and when the other is to be attributed to the word. It must all depend upon the context with which it is used and the presumed intent of those who use the word, judged by the usual principles of construction. We have held that in certain portions of the constitution the words "as provided by law" refer to a statutory enactment and exclude the common law. *Shute* v. *Frohmiller*, 53 Ariz. 483, 90 Pac. (2d) 998. On the other hand, there are other constitutional provisions, such as section 4 of Art. 2, which is in the following language:

"*(Right to life, liberty, property.)*—No person shall be deprived of life, liberty, or property without due process of law."

where it would be universally admitted that the word "law" is used in a far broader sense.

We consider, therefore, in what sense the makers of the constitution used the word "law" in section 22 of Art. 6, *supra*. It will be noted that the first sentence of the section is followed by a sentence which, standing alone, seems somewhat unrelated to the first if the construction urged by the attorney general is adopted. If, however, we join the two sentences into one, inserting the conjunction "but," they have a clear and distinct related meaning and one which we have frequently held was the real purpose of the section. From time immemorial it has been recognized by all courts that criminal substantive law should be administered under a definite, regular and orderly system of procedure, and not according to the mere whim or judg-

ment of the individual judge in a particular case. At the time of the adoption of the constitution, criminal procedure and pleadings in Arizona were governed by such a system, which consisted partially of statutory law, partially of the common law, and partially of rules adopted by the courts.

██ It was well known by the members of the constitutional convention that many courts for years had taken the position that in the administration of law the form was as important as the substance, and that if any of the rules governing criminal procedure were violated, no matter though such violation was in no manner prejudicial to the substantial rights of the defendant, a conviction must be set aside. The plain common sense of the constitution makers told them the courts must be reminded that after all their purpose was to see that substantial justice was done, and that rules of pleading and procedure were of importance only as they helped to achieve that result. We think, therefore, that the constitutional provision was not meant as a restriction on the *method* by which a system of criminal procedure was to be set up, but was intended as a declaration that notwithstanding such a system was necessary, a judgment which accomplished substantial justice should not be reversed merely for a violation thereof. If this be its meaning, then not only statutes but rules of courts which are part of our system of criminal procedure are ''law'' within the meaning of section 22 of Art. 6, *supra,* and section 44–2304, is not obnoxious to the constitutional provision.

But, says the attorney general, even assuming that that be true, when the legislative power assumes the rule-making function, its statutes are superior to any rules established by the courts in so far as there is a conflict between them.

The alleged conflict is between the use of the word ''day'' in the initiated measure and the word ''week'' in section 44–2304, *supra.* If the word ''day'' is to be

construed as meaning a specified twenty-four hours of the calendar, while the word "week" means seven of those periods, it must be admitted there is a conflict. If, however, the word "day" be interpreted as meaning any "time" not less than sixty nor more than ninety days from the date of judgment, the two provisions are not necessarily in conflict.

Upon a careful consideration of the matter, we are of the opinion that only by a strained and unreasonable method of construction can the word "day" be given anything but its usual meaning of a definite and specific twenty-four hour period, while the word "week" undoubtedly can mean nothing but seven days of those periods. This being the case, there is a definite conflict between section 44-2304, *supra,* and section 2 of initiated measure No. 306, *supra.* We must then determine which controls, the legislative act or the court rule.

When the people act in their legislative capacity through an initiated measure, they have only the same powers which the legislature would have, and any act so passed is limited by constitutional provisions to the same extent as an act of the legislature. This is not true when they act through a constitutional amendment, for in that case their only limitation is the federal constitution. But there is one difference between an initiated and a legislative law. While a legislative act may be repealed by a subsequent legislature, an initiated measure, once adopted, can only be repealed in the same manner in which it was adopted. The provisions of chapter 8, *supra,* therefore, cannot affect the initiated measure. If the people had the power to adopt it in the first place, so as to make it superior to a rule promulgated by the court, it is still in effect and valid.

The question then is whether an initiated measure affecting pleading and procedure is superior to a court rule which is in conflict with the measure.

Respondent in this case has made a most plausible argument that the constitutional power of the court in this respect is exclusive. He bases it upon Art. 3 and Art. 6, section 1, of the Constitution, which read, respectively, as follows:

"*Distribution of powers.* The powers of the government of the state of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

"*(Courts.)*—The judicial power of the state shall be vested in a Supreme Court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law."

The argument is substantially as follows: (a) The legislative department of the government may not exercise a power properly belonging to the judicial department; (b) the entire judicial power of the state is vested in the courts; and (c) the rule-making power is judicial in its nature and not legislative. If these three propositions are true, the argument is, indeed, a logical and consistent one. In accordance with the great weight of authority on the subject, we have held in *Burney* v. *Lee,* 59 Ariz. 360, 129 Pac. (2d) 308, that the rule-making power is judicial in its nature. We have previously held that the courts have the inherent right, without express permission from the legislature, to formulate rules of procedure. *Burney* v. *Lee, supra; DeCamp* v. *Central Ariz. L. & P. Co.,* 47 Ariz. 517, 57 Pac. (2d) 311. But, while we have no specific provision, as in other constitutions, expressly giving the rule-making power to the legislature, yet section 19, subdiv. 5, of Art. 4, part 2, of the Constitution at least implies that power in the following language:

"*(Local or special laws.)*—No local or special laws shall be enacted in any of the following cases, that is to say: . . ."

"5. Regulating the practice of courts of justice."

What, then, may be said when a rule formulated by the court conflicts with one based on legislative action? In *Burton* v. *Mayer*, 274 Ky. 263, 118 S. W. (2d) 547, 549, the court said:

"Section 109 of the State Constitution vests the 'judicial power' of the Commonwealth 'in the senate when sitting as a court of impeachment, and one supreme court (to be styled the court of appeals) and the courts established by this Constitution.' The separation of the judicial power from the executive power and the legislative power was not merely a matter of convenience. The three branches of government are co-ordinate and yet each, within the administration of its own affairs, is supreme. The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the *administration* of justice under the Constitution. [citing cases] Rules of practice and procedure are, fundamentally, matters within the judicial power and subject to the control of the courts in the administration of justice. The courts accept legislative *co-operation* in rendering the judiciary more effective. They deny the right of legislative *dominance* in matters of this kind. [citing case].

"So long as the rules of practice fixed by the Legislature accord with the proper and effective administration of justice, they should be, and they are, followed to the letter. No other rule will accord with the duty of each of the three branches of government so to co-ordinate its administration as to carry into effect the purposes of the Constitution. Where, however, a situation arises in which the administration of justice is impaired or the general rules of practice are unworkable, the duty undoubtedly rests on the courts to draw upon the reserve of their inherent power, not in the assertion of a domination over other co-ordinate branches of government, but in co-operation with the legislative and executive branches to carry out the purposes of the Constitution."

The supreme court of Indiana, in *Solimito* v. *State*, 188 Ind. 170, 122 N. E. 578, also says:

"It may be that appellant was relying upon section 3 of chapter 143, Acts 1917, p. 523. So far as this act refers to the rules of this court and what shall be deemed a sufficient brief, and when defects in such brief shall be pointed out, the same is void. This court has power to make its own rules as to briefs, and as to the conduct of business before the court. It is not a legislative function to make rules for the court, or to say what the court shall consider a sufficient brief. This court will have to be the judge of how it can best expedite business, and how questions can best be presented by briefs so that each member of the court may have an opportunity, if necessary, to consider particularly each case. So far as briefing is concerned, it will be well for litigants to proceed as they have heretofore under the rules made by this court."

We have heretofore, in substance, adopted the rule set forth in *Burton* v. *Mayer, supra,* in the following language:

" . . . The majority of the states, however, have recognized for many years that notwithstanding the power is judicial, the legislature may exercise the rule-making power and that when it does the courts will bow to such authority, except in so far as the rules made by the legislature may 'unreasonably limit or hamper the courts in the performance of the duties imposed upon them by the Constitution, or violate the provisions of article 3 of our Constitution.' [citing case]." *Burney* v. *Lee, supra* [129 P. 2d 310].

To put the matter in simpler language, the rule-making power rests in both the courts and the legislature. When the legislature enters that field, the courts will bow to its judgment so long as these rules accord with the proper administration of justice. When, however, it appears that the legislative rule unduly hampers the court in the performance of the duties imposed upon it by the Constitution, the rule adopted by the court will prevail.

Applying this rule to the present situation, it is obvious that the legislative requirement that a day

certain instead of a week certain be set for the execution of a death sentence cannot be said to unreasonably hamper the court in the administration of justice. Such being the case, the court bows to the expressed wish of the legislative power, setting aside its own rule in favor of the initiated act, but always retaining the power to determine whether any particular legislative entry into the rule-making field does hamper the court unduly in its administration of its constitutional duties.

While the judgment of guilty and the death sentence imposed by respondent were regular and proper, the death warrant fixing a week and not a day upon which the sentence of death should be carried out was irregular and a violation of the existing law upon the subject. The initiated measure, in section 9, provides how a situation of this kind shall be dealt with and the procedure to be followed is fully set forth therein. The county attorney should cause the defendant to be brought before the court in which the original conviction was had, whereupon a new death warrant will doubtless issue.

Under these circumstances, we think the alternative writ of *mandamus* heretofore issued should be quashed, and it is so ordered.

McALLISTER and ROSS, JJ., concur.