404 P.2d 705

L. L. IMAN and R. E. Wilson, Appellants,

v.

Wesley BOLIN, in his capacity as Secretary of State for the State of Arizona, Appellee.

L. L. IMAN and R. E. Wilson, Appellants,

v.

Wesley BOLIN, acting in his capacity as Secretary of State of the State of Arizona, and Rhea Woodall et al., Clerks of the Boards of Supervisors of the Fourteen Counties of the State of Arizona, respectively, and the Boards of Supervisors of the Fourteen Counties of the State of Arizona, Appellees.

Nos. 8537, 8543.

Supreme Court of Arizona.

En Banc.

July 16, 1965.

Peterson, Estrada, Matz & Machmer, Gerald A. Machmer, and Howard V. Peterson, Phoenix, for appellants.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Philip E. von Ammon, Joseph S. Jenckes, Jr., Sp. Counsel, Phoenix, for appellees.

STRUCKMEYER, Vice Chief Justice.

The subject matter of these appeals arises out of two actions in which L. L. Iman and R. E. Wilson, appellants, sought injunctions in the court below against Wesley Bolin as Secretary of State. In both instances, appellants attacked the validity of Initiative Measure No. 200 acted on by the people of this state in the general election of November 4, 1964. The trial court denied appellants' prayers for relief and entered judgments in favor of the defendants. Because the subject matter of the controversies was similar and the parties were the same, the two causes were ordered consolidated in this Court. After oral arguments, we affirmed the judgments in both causes by minute entry orders with a written decision to follow.

■ The power to propose statutes and constitutional amendments and to enact or reject them at the polls is reserved to the people by Article 4, Part 1, § 1 of the Constitution of Arizona, A.R.S., which provides, *inter alia*, " * * * the people reserve the power to propose laws and amendments to the Constitution and to enact * * * such laws and amendments at the polls, independently of the Legislature; * * *." In addition, Article 22, § 14 of the Constitution of Arizona provides that,

"Any law which may be enacted by the Legislature under this Constitution may be enacted by the people under the Initiative. Any law which may not be enacted by the Legislature under this Constitution shall not be enacted by the people." The procedures established by the legislature for the enactment of laws by the people are through initiative petition. They may be found in the Arizona Revised Statutes in §§ 19–101 through 19–129.

A.R.S. § 19–122, subsec. B provides:

"If any petition filed is not legally sufficient, the court may enjoin the secretary or other officers from certifying or printing on the official ballot for the ensuing election the amendment or measure proposed or referred."

The initiative measure here under consideration purports to amend and repeal certain articles and sections of the Arizona Revised Statutes adopted by the legislature in 1912. It is, in part, entitled "AN ACT RELATING TO RAILROADS; ELIMINATING FEATHERBEDDING BY REMOVING REQUIREMENTS FOR TRAIN CREWS AND BRAKEMEN; * * *." Pursuant to A.R.S. § 19–125, it was assigned Initiative Measure No. 200 on the official ballot by the Secretary of State.

The court below found that there were filed with the Secretary of State certain petitions with accompanying signature sheets attached signed by 54,203 qualified electors of the State of Arizona; that the number of signatures on the petition was in excess of ten per cent of the number of votes cast for the governor at the general election last preceding the filing of the petition, 1962, as required by Article 4, Part 1, § 1, ¶¶ (2) and (7) of the Constitution of Arizona. The court below concluded as a matter of law that the petition and the action of the Secretary of State complied in all respects with requirements of the Constitution and laws of the State of Arizona pertaining to initiative measures and directed judgments in favor of the appellee.

THE APPEAL IN CAUSE NO. 8537

Appellant presents three matters which we consider seriatim. It is urged that the initiative petition was not legally sufficient, having a substantial procedural or formal defect in that it was in fact a proposed constitutional amendment and not an initiative measure, and that as a constitutional amendment the number of signatures on the petition are not sufficient to satisfy the minimum requirements for inclusion upon the ballot.

By Article 4, Part 1, § 1 of the Constitution of Arizona, initiative petitions must be submitted to the Secretary of State for inclusion on the ballot in the next general election. Such petitions must contain the signatures of qualified electors equal to or exceeding ten per cent of the votes cast for all candidates for governor at the general

election last preceding the filing of the petitions. To initiate an amendment to the Constitution, the signatures of fifteen per cent of such qualified electors are required. Concededly, 54,203 is more than ten per cent but less than fifteen per cent of the votes cast for governor in 1962. The petition could therefore qualify as an initiative measure but not as a constitutional amendment.

Appellants' argument stems from that language of the proposed measure which provides *"nothing contained in the laws of this State* shall prevent a common carrier by railroad from manning its trains in accordance with said award [Federal Arbitration Board Award No. 282], in accordance with any federal legislation or awards pursuant thereto, or in accordance with any agreement between a railroad company and its employees or their representatives." It is urged that the phrase, "the laws of this State," as used in the petition contemplates not only the statutes of the state but includes the Constitution and decisions of this Court; that if given this meaning, it would have the effect of repealing certain provisions of the State Constitution. For example, Article 15 of the Constitution, § 10, declares railroads to be common carriers and subject to control by law. The initiative measure would be in conflict with that article by limiting the power of the Corporation Commission with respect to the manning of trains.

It is true that the word "law" has been held to include not only statutes but constitutional enactments and interpretations of the courts. Certainly the law of the United States is to be found in its Constitution, the acts of Congress passed in pursuance thereof, treaties and all those matters especially committed to the judicial power in the rulings of the courts. Stoffel v. W. J. McCahan Sugar Refining and Molasses Co., D.C., 35 F.2d 602, 603. On the other hand, in a more restricted sense and often in its popular sense, the law is an enactment or statute prescribed by legislative power. And the word is often confined or refers only to statutes or legislative enactments. United States v. Thomas, D.C., 145 F. 74, 79.

In the instant case, the latter construction should be given the term "laws of this State" as used in the measure. We said, in Roberts v. Spray, 71 Ariz. 60, 223 P. 2d 808:

> "It is a cardinal rule of statutory construction that every intendment is in favor of the constitutionality of legislation, State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631, and unless its invalidity is established beyond a reasonable doubt it will be declared constitutional. Black & White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139; Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878.

\*   \*   \*   \*   \*   \*

"It is our duty to reconcile the language of the Act [legislative] with the provisions of the constitution if possible. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854.

\* \* \* \* \* \*

" 'It is elementary law that every statute is to be read in the light of the constitution. However broad and general its language, it cannot be interpreted as extending beyond those matters which it was within the constitutional power of the legislature to reach.' " 71 Ariz. at 69–70, 223 P.2d at 813–814.

■ We have held that the only difference between an "initiated law" and an act of the legislature is that, while the latter may be repealed by subsequent legislation, the former can only be repealed in the same manner in which it was adopted. State ex rel. Conway v. Superior Court, 60 Ariz. 69, 78, 131 P.2d 983, 987; and see, as modified, Adams v. Bolin, 74 Ariz. 269, 275, 247 P.2d 617, 33 A.L.R.2d 1102.

■ Over fifty years ago this Court clearly indicated its reluctance to interfere with the legislative function. State v. Osborn, 16 Ariz. 247, 143 P. 117. In that case, it was determined that the power of the people to legislate is as great as the power of the legislature to legislate. The term "legally sufficient" as used in what is now A.R.S. § 19–122, subsec. B was interpreted

to mean, " \* \* \* a valid petition, signed by legal voters, and complying substantially, not necessarily technically, with the requirements of the law." 16 Ariz. at 250, 143 P. at 118. It was also held in State v. Osborn, supra, that the constitutionality of the proposed measure cannot be determined at this stage of the legislative process. "That question can and will be determined only when it is presented to this court in the course of litigation by some litigant whose rights are involved." Id. at 251, 143 P. at 119. The principles set forth therein have been adhered to in subsequent decisions of this Court. E. g., Williams v. Parrack, 83 Ariz. 227, 319 P.2d 989; Adams v. Bolin, supra.

■ Initiative Measure No. 200 sets forth a demand that the "proposed measure" be submitted to the qualified electors. Following the title of the measure, provisions of the Arizona Revised Statutes intended to be amended or repealed are set forth. "[T]he laws of this State," from the content of and as used in the proposed measure, clearly refers to statutes—legislative enactments. Even if the proponents of this measure had obtained the signatures of over fifteen per cent of the qualified voters on the petition, as it is worded it could not have changed the measure to a constitutional amendment.

■ Moreover, even were the measure in conflict with the Constitution, this

has no bearing on the right of the people to enact it. State v. Osborn, supra. The same is true of an act of the legislature. Only after legislation becomes law will its constitutionality be tested. Williams v. Parrack, supra; State v. Osborn, supra. We have held only where an initiative petition is defective in form or does not bear the number of signatures of qualified electors required by Article 4, Part 1, § 1, Constitution of Arizona, or where the prescribed procedure has not been followed will a court intervene and enjoin its enactment. Williams v. Parrack, supra; State v. Osborn, supra; Adams v. Bolin, supra.

▮▮▮▮ Appellants argue in effect that the proposed measure contains more than one subject, none of which are expressed in the title as required of all legislation by Article 4, Part 2, § 13, Constitution of Arizona. This provision in our Constitution is applicable only to acts of the legislature. The measure in question is governed by Article 4, Part 1, § 1, and the statutes cited supra. We have held they require only that, "it shall have *some* title and *some* text." Barth v. White, 40 Ariz. 548, 556, 14 P.2d 743, 746. There we concluded that where the petition is sufficient in form and bears the number of legal signatures, nothing further is required to make it the duty of the Secretary of State to place the proposed measure on the ballot.

Appellants also claim the title and content to be so misleading as to deceive the voters as to its nature and effect. Here again they base their argument on Article 4, Part 2, § 13 of the Constitution of Arizona which is not applicable to an initiative measure. Barth v. White, supra. We note that the Secretary of State fulfilled the obligation imposed upon him by A.R.S. § 19–125, subsec. D by preparing, " * * * a descriptive title containing a summary of the principal provisions of the measure * * *," which was printed on the official ballot immediately below the official title.

### THE APPEAL IN CAUSE NO. 8543

This action sought to enjoin the Secretary of State from distributing publicity pamphlets to the County Boards of Supervisors. Appellants complain of certain errors in the printing and distribution of the publicity pamphlets by the Secretary of State. By A.R.S. § 199–123, a duty is imposed upon the Secretary of State to prepare publicity pamphlets and deliver them to the board of supervisors of each county not later than the tenth day before the primary election. Each elector applying to vote must then be offered one.

▮▮▮▮ Such pamphlets were prepared, embracing six matters to be submitted to the electorate. Appellants assert that the cover page of the pamphlet referred to Proposition 200 as a referendum rather than as an intiative measure. A cover page is not required by the statute but in con-

# 366

sidering whether it might have a tendency to mislead we have examined the cover page and find no foundation for appellants' assertion.

 Appellants finally complain of the fact that the original publicity pamphlet did not contain, "[a] true copy of the title and text of the measure," as required by A.R.S. § 19–123. It appears that in the original pamphlet the words, "one fireman", contained in the petition, were omitted from the copy of the petition as published in the pamphlet. Shortly after the filing of this action the Secretary of State prepared a correction sheet which was delivered to the various boards of supervisors on or about August 31, 1964, the election being scheduled for September 8, 1964.

In Kerby v. Griffin, 48 Ariz. 434, 445, 62 P.2d 1131, 1136, it was stated:

"[W]hen it appears affirmatively the constitutional and statutory rules in regard to the manner in which initiative and referendum petitions should be submitted have been so far violated that there has been no substantial compliance therewith, that the courts have jurisdiction to enjoin the election at the suit of an interested citizen."

It is our opinion that the facts in the instant case indicate substantial compliance by the Secretary of State with the statutory and constitutional requirements imposed upon him:

We therefore find that the Initiative Measure No. 200 is "legally sufficient" within the meaning of the Constitution and statutes and that the publicity pamphlet was sufficient to comply with A.R.S. § 19–123.

Judgments affirmed.

LOCKWOOD, C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concur.