435 P.2d 851

Lester L. IMAN, Robert W. Walker, Thomas A. Kirby, Wright P. Thomas, J. C. Guyton, Jr., J. C. Bennett, Art. J. Coates, J. C. Boyle, R. B. Ozment and John Does 1 to 1,000, inclusive, the Brotherhood of Locomotive Firemen and Enginemen, a labor organization, and Local Lodges 94, 173, 544, 632 and 970 of the Brotherhood of Locomotive Firemen and Enginemen, Appellants,

v.

SOUTHERN PACIFIC COMPANY, a Delaware corporation, the Atchison, Topeka and Santa Fe Railway Company, a Kansas corporation, and Darrell F. Smith, Attorney General of the State of Arizona, Appellees.

No. 1 CA–CIV 344.

Court of Appeals of Arizona.

Jan. 2, 1968.

Peterson, Estrada & Matz, and Howard V. Peterson, Phoenix, for appellants.

Evans, Kitchel & Jenckes, by Joseph S. Jenckes, Jr., Phoenix, for appellee Southern Pacific.

Fennemore, Craig, Allen & McClennen, by Philip E. von Ammon, Phoenix, for appellee Atchison, Topeka and Santa Fe Railway.

Darrell F. Smith, Atty. Gen., Phoenix, for appellee State of Arizona.

KRUCKER, Judge.

The appellants (plaintiffs in the trial court) brought this action under the Declaratory Judgments Act, A.R.S. § 12-1831 et seq., seeking to have declared unconstitutional the Railroad Anti-Featherbedding Law of 1964. This law, which became effective December 3, 1964, was enacted by the electors of the State of Arizona through initiative petition submitted for their approval or rejection at the general election held on November 3, 1964. (This initiative measure is hereinafter referred to as Proposition 200.) [1] From a judgment of dismissal, the plaintiffs appealed.

The initiative measure as enacted into law, repealed all the provisions of A.R.S. § 40-881 [2] with the following exceptions which were amended to read as follows:

"B. A passenger, mail or express train composed of less than six cars, when operated outside yard limits shall

---

[1.] A previous attack on the validity of Proposition 200 was unsuccessful. See Iman v. Bolin, 98 Ariz. 358, 404 P.2d 705 (1965).

[2.] A.R.S. § 40-881, prior to December 3, 1964, provided:
A. A single locomotive, or a single locomotive with tender, when operated

carry a crew consisting of not less than one engineer, one fireman, one conductor and one flagman. This subsection shall not apply to gasoline motor cars.

C. A passenger, mail or express train composed of six or more cars, when operated outside yard limits shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one baggage master, one flagman and one brakeman."

This repeal effected a removal of all legislative prescription of crew requirements for freight trains. A.R.S. § 40-853, which prohibited the operation of a train without a brakeman on certain grades and prescribed the penalty therefor, was likewise repealed, as was § 40-885 which prescribed the crew requirements for locomotives propelled by motive power other than steam. Also enacted were A.R.S. § 40-886.01 and § 40-886.02:

"§ 40-886.01 Citation

This Act shall be known and cited as the Railroad Anti-Featherbedding Law of 1964.

§ 40-886.02. Featherbedding

"It is the policy of the people of the State of Arizona that featherbedding practices in the railroad industry should be eliminated and that national settlement of labor controversies relating to the manning of trains should be made effective in Arizona. Accordingly, the award of the Federal Arbitration Board No. 282 [3] appointed by President John F. Kennedy pursuant to Congressional Public Law 88-108 of August 28, 1963, providing for the elimination of excess firemen and brakemen on diesel power trains, or awards made pursuant thereto, shall be made effective in this State. Said award was the culmination of the proceedings originating with the Presidential Railroad Commission which was appointed by President Dwight D. Eisenhower at the request of both railroad labor and management and which reported to President Kennedy on February 26, 1962.

Nothing contained in the laws of this State shall prevent a common carrier by railroad from manning its trains in accordance with said award, in accordance with any federal legislation or awards

outside yard limits, shall carry a crew of not less than one engineer, one fireman, and one conductor or flagman. This subsection shall not apply to helper locomotives going or returning a distance of twenty-five miles.

B. A passenger, mail or express train composed of less than six cars, when operated outside yard limits shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one baggage master and one flagman. This subsection shall not apply to gasoline motor cars.

C. A passenger, mail or express train composed of six or more cars, when operated outside yard limits shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one baggage master, one flagman and one brakeman.

D. A freight train composed of fewer than forty cars, when operated outside yard limits, shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one flagman and one brakeman.

E. A freight train composed of forty or more cars, when operated outside yard limits, shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one flagman and two brakemen.

F. All local freight trains doing switching, or unloading freight of whatever nature, shall carry a crew consisting of one conductor, one engineer, one fireman, two brakemen and one flagman.

G. All trains other than those described in the preceding subsections of this section, when operated outside yard limits, shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one flagman and one brakeman.

H. Flagmen mentioned in the preceding subsections of this section shall have had at least one year of experience as brakemen.

I. Engines used in switching or placing cars within the limits of a railroad yard shall carry a crew of not less than one engineer and one fireman.

3. Federal Arbitration Award No. 282 was of two years' duration and expired on January 25, 1966.

pursuant thereto, or in accordance with any agreement between a railroad company and its employees or their representatives."

The plaintiffs were firemen and labor organizations composed of locomotive firemen and enginemen. The substance of their grievance, as set forth in their pleading, was that the defendant railroads, pursuant to Proposition 200, had already terminated the employment of some of the plaintiffs and threatened to terminate the employment of the remaining plaintiffs in the immediate future and:

"* * * that the enactment and existence of Proposition 200 as the law of this State has caused, or threatened to be caused, through Defendant railroads, among other things, a loss of jobs, security, seniority and pensions to Plaintiffs; that said Proposition 200 poses an immediate threat and a clear and present danger to the economic security, accrued seniority, jobs and pension rights of each 'fireman' including all individual Plaintiffs herein employed by either Defendant railroads on the date of adoption of Proposition 200."

■ Although the complaint set forth various enumerated bases to support the claim of unconstitutionality, only three are urged on appeal and therefore we construe the others to be abandoned. Cf., Killingsworth v. West Way Motors, Inc., 87 Ariz. 74, 347 P.2d 1098 (1959). The constitutionality of Proposition 200 is attacked on the grounds that (1) it constituted an unlawful and unconstitutional delegation of legislative authority, (2) it was violative of Art. 15 § 10 of the Arizona Constitution, A.R.S., and (3) it violated the Enabling Act, 36 U.S.Stat. 557, 568–579.

In the case of Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950), our Supreme Court held that a complaint was properly dismissed on motion for failure to state a claim for relief where the motion squarely presented the question of whether a legislative enactment violated specified constitutional provisions for any of the reasons alleged in the complaint. In that case, just as here, the challenged enactment was made a part of the complaint. On appeal, the plaintiffs do not question the procedural propriety of the ruling below. We believe that if the facts appearing from the face of a complaint justified the trial court in concluding that the declaration sought was not necessary or proper, the granting of the motion to dismiss the complaint was correct. Hagan v. Fairfield, 238 Cal.App. 2d 197, 47 Cal.Rptr. 600 (1965); Silver v. City of Los Angeles, 217 Cal.App.2d 134, 31 Cal.Rptr. 545 (1963); Skowronski v. City of Worcester, 346 Mass. 778, 195 N.E. 2d 505 (1964).

We shall consider the plaintiffs' challenges to Proposition 200 in inverse order. Their claim that the initiative power of the electors (Art. 4 § 1 of the Arizona Constitution) is a violation of the Enabling Act is based upon § 20 thereof, which reads in pertinent part:

"The constitution shall be republican in form * * * and shall not be repugnant to the Constitution of the United States * * *."

Art. 4 § 4 of the Constitution of the United States provides that:

"* * * The United States shall guarantee to every State in this Union a Republican Form of Government * * *."

■ The defendants challenged the trial court's jurisdiction over the subject matter of this question, contending the issue to be "political" rather than judicial. It has been held that whether or not a state has ceased to be republican in form within the meaning of the guarantee of Art. 4 § 4 of the United States Constitution because of its adoption of the initiative and referendum is not a judicial question but a political one which is solely for the legislature to determine, hence courts have no jurisdiction over the matter. See Ohio ex rel. Davis v. Hildebrant, 241 U.S. 565, 36 S.Ct. 708, 60 L. Ed. 1172 (1916); Kiernan v. City of Portland, 223 U.S. 151, 32 S.Ct. 231, 56 L.Ed. 386 (1912); Pacific States Tel. & Tel. Co.

v. State of Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912). It is possible, therefore, in the light of these decisions, that the trial court declined to consider the question.

■ If it did consider it, however, and resolved the question in favor of constitutionality, we believe it was correct. Our constitutional provision is not in conflict with the guarantee of the United States Constitution of a republican form of government but merely constitutes a reservation to the people of a share of legislative power. Kadderly v. City of Portland, 44 Or. 118, 74 P. 710, 75 P. 222 (1903); State ex rel. v. Board of Commissioners, 93 Kan. 405, 144 P. 241 (1914); Ex parte Wagner, 21 Okl. 33, 95 P. 435 (1908). As stated in the Kansas case:

> "A republican form of government is 'one constructed on this principle, that the supreme power resides in the body of the people.' [Citation omitted]" 144 P. at 243.

See also, Adams v. Bolin, 74 Ariz. 269, 281, 247 P.2d 617 (1952).

Proposition 200 is additionally assailed as being violative of Art. 15 § 10 of the Arizona Constitution which provides:

> "Railways heretofore constructed, or that may hereafter be constructed, in this State, are hereby declared public highways, and all railroad, car, express, electric, transmission, telegraph, telephone, or pipeline corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and *subject to control by law*." (Emphasis supplied)

■■ When the people act in their legislative capacity through an initiative measure, their enactments are as much "law" as those enacted by the legislature. Iman v. Bolin, supra; Adams v. Bolin, supra; State ex rel. Conway v. Superior Court, 60 Ariz. 69, 131 P.2d 983 (1942). We do not construe this constitutional provision as mandating state legislative control, hence the provisions of Proposition 200 which effected a repeal of the prior laws governing the manning of freight trains did not violate this constitutional provision.

We therefore conclude that there was no constitutional flaw in the repeal of A.R.S. § 40–853, § 40–885, paragraphs A, D, E, F, G, H and I of § 40–881, and the amendment thereof, unless as we shall subsequently discuss, they are infected with unconstitutionality because of their association, in inception, with the new sections 40–886.01 and 40–886.02.

The main thrust of the plaintiffs' claim that Proposition 200 is invalid is directed at these new sections, the contention being made that they constitute an unconstitutional delegation of legislative authority. Particular exception is taken to the following language:

> "Nothing contained in the laws of this State shall prevent a common carrier by railroad from manning its trains in accordance with said award, in accordance with any federal legislation or awards pursuant thereto, or in accordance with any agreement between a railroad company and its employees or their representatives."

■ We are of the opinion that this constitutionality issue was not properly before the trial court. As we have previously stated in Manning v. Reilly, 2 Ariz.App. 310, 408 P.2d 414 (1965) regarding the litigation of a constitutionality question:

> "In order to serve as a basis for declaratory relief, a controversy involving a statute or ordinance must be justiciable, i. e., there must be specific adverse claims, based upon present rather than future or speculative facts, which are ripe for judicial determination. A mere difference of opinion as to the constitutionality of legislation does not afford a basis for declaratory relief. 22 Am.Jur. 2d, Declaratory Judgment § 26. * * * A declaratory judgment proceeding to obtain an advisory judgment or to an-

swer a moot or abstract question will not lie." 2 Ariz.App. at 314, 408 P.2d 414 at 418.

The plaintiffs made no claim below that the defendant railroads had attempted to man their trains in accordance with any federal legislation or awards pursuant thereto or in accordance with any agreement between a railroad company and its employees or their representatives, in violation of any law of this state. Therefore, the constitutionality of A.R.S. § 40–886.02 was not ripe for determination, absent a showing of an *existing* state of facts. Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District, 102 Ariz. 69, 424 P.2d 819 (1967); City of Mesa v. Salt River Project Agr. Imp. & Power Dist., 92 Ariz. 91, 373 P.2d 722 (1962), appeal dismissed 372 U.S. 704, 83 S.Ct. 1018, 10 L.Ed.2d 124 (1963).

A.R.S. § 12–1832 provides:

"Any person * * * whose rights, status or other legal relations are *affected by a statute* * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis supplied.)

Constitutionality of a statute will not be determined when the case can be decided without ruling upon such question. County of Maricopa v. Anderson, 81 Ariz. 339, 306 P.2d 268 (1957); Hart v. Bayless Inv. & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1960); Town of Scottsdale v. State ex rel. Pickrell, 1 Ariz.App. 85, 399 P.2d 706 (1965). Unless the plaintiffs were "affected by" the application of A.R.S. § 40–886.02, the requisite element of justiciability was lacking. Uhlmann v. Wren, 97 Ariz. 366, 401 P.2d 113 (1965); Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120, Modified, Rehearing denied, 2 Ariz.App. 348, 409 P.2d 64 (1965).

As this court has recently indicated, the Declaratory Judgments Act was not intended to constitute the court a "foun-tain of legal advice." Connolly v. Great Basin Ins. Co., 6 Ariz.App. 280, 431 P.2d 921, 927 (1967). Unless the repeal of the prior statutes pertaining to the manning of freight trains is dependent upon a determination of the validity of A.R.S. § 40–886.02 because of inseparability, it was proper for the trial court to decline to consider the question of its constitutionality. This is so because the plaintiffs would not have been "affected" by A.R.S. § 40–886.02, hence not entitled to a declaration as to its validity, but rather were "affected" only by the repeal of the full crew requirements for freight trains. Thus if the repeal portions of Proposition 200 were severable, this particular constitutionality question would have to be postponed until encountered on the "highway of adjudication." Salinas v. Kahn, supra.

Separability is a question of legislative intent:

" * * * the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other, the act will be upheld so far as valid

* * * * * *

"To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed." Millett v. Frohmiller, 66 Ariz. 339, 342, 188 P.2d 457, 460 (1948).

The pivotal question is—Would omission of A.R.S. § 40–886.02 render incapable of fulfillment the apparent intent

of the people in repealing and amending the train crew requirements contained in A.R.S. §§ 40–881, 40–853 and 40–885? We think not. A reading of the publicity pamphlet containing Proposition 200 indicates that the overriding intent was to eliminate statutory requirements of certain minimum train crews.

The initiative measure is therein described as:

"AN ACT RELATING TO RAILROADS; ELIMINATING FEATHERBEDDING BY REMOVING REQUIREMENTS FOR TRAIN CREWS AND BRAKEMEN; AMENDING TITLE 40, CHAPTER 4, ARTICLE 4, ARIZONA REVISED STATUTES, BY ADDING SECTIONS 40–886.1 AND 40–886.2, REPEALING SECTION 40–853, PARAGRAPHS A, D, E, F, G, H AND I OF SECTION 40–881, AND SECTION 40–885, AND AMENDING SECTION 40–881, ARIZONA REVISED STATUTES." [4]

(Emphasis supplied)

Thus it is clear that the repeal, standing alone, was sufficient in and of itself to effectuate the people's intent. Being severable, therefore, the validity of the repeal would be unaffected by a determination as to the validity of A.R.S. § 40–886.02. Cf. Killingsworth v. West Way Motors, Inc., 87 Ariz. 74, 84, 347 P.2d 1098 (1959); Barbee v. Holbrook, 91 Ariz. 263, 266, 371 P.2d 886 (1962); 82 C.J.S. Statutes § 93a.

For the reasons herein stated, the trial court's action was correct and the judgment of dismissal is affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

4. Sections 40–886.1 and 40–886.2 were renumbered as sections 40–886.01 and 40–886.02 under the authority of A.R.S. § 41–1304.02.