507 P.2d 113

**CITIZENS' COMMITTEE FOR the RECALL OF JACK WILLIAMS et al., Petitioners,**

**v.**

**Paul MARSTON et al., Respondents.**

**No. 11128.**

Supreme Court of Arizona,
In Banc.

March 1, 1973.

James M. Rutkowski, Tolleson, Bruce Meyerson, Phoenix, for petitioners.

Gary K. Nelson, Atty. Gen., by James B. Feeley, Asst. Atty. Gen., Evans, Kitchel & Jenckes, P. C., by David Wm. West, Phoenix, for respondents.

CAMERON, Vice Chief Justice.

This is a petition for special action brought by the plaintiffs-petitioners from an order of the Superior Court dismissing the plaintiffs' complaint.

On appeal we are called upon to determine if the trial court abused its discretion in dismissing the action. Plaintiffs-petitioners specifically contend that they are entitled to a hearing and relief upon three questions:

1. Are the provisions of § 16–103 and § 16–151 A.R.S., which provide for the canceling of the registration of all voters who failed to vote in the last election, unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. VIII, § 1 of the Arizona Constitution?

2. Does the application of § 16–151 A. R.S., canceling the registration of those who failed to vote in the last general election but who may wish to vote in a contemplated recall election, violate the equal protection clause of the Fourteenth Amendment of the United States Constitution?

3. May the county recorder be compelled to mail postcards (for re-registration) to those who have lost their registration by not voting prior to the 1 April date set by statute (§ 16–151 [B] A.R.S.)?

The facts necessary for a determination of this matter are as follows. Plaintiffs' complaint alleges that the plaintiffs, Citizens' Committee for the Recall of Jack Williams, is "a coalition of thirty (30) Arizona associations actively engaged in sponsoring, advertising and promoting the recall of Arizona Governor, Jack Williams." The complaint further alleges that "Frances Alvarez, John Vincent and Bernie Abeytia are three of some 213,751 residents of the State of Arizona who were properly registered to vote in the general election held 7 November 1972, but failed to vote in that election" and whose right to vote has been canceled pursuant to statute. They allege that they bring this action on their own behalf and on behalf of all Arizona residents who were properly registered to vote in the 7 November general election but who failed to do so.

The plaintiff committee contends that it has in its possession recall petitions containing substantially more than the minimum number of signatures required by Art. VIII, § 1 of the Arizona Constitution, A.R.S., and § 19–201 A.R.S. The complaint also alleged that the committee intended to file these petitions on or about 2 January 1973, though at the writing of this opinion this has not been done.

After the filing of the said complaint, the defendants moved to dismiss pursuant to Rule 12(b)(6), Rules of Civil Procedure, 16 A.R.S., on the basis that, "(1) There is no justiciable issue; and (2) no rights have been denied, as no action has been taken to the damage of any of the named Plaintiffs, nor have the Plaintiffs taken any action to cause any official of the State of Arizona to act." The motion was argued before the respondent Superior Court judge who ordered: "I am granting the motion because it is my feeling that the Court doesn't have jurisdiction." Plaintiffs brought a petition for special action in this court and we took the matter under advisement pending a review of the record made in the trial court.

## ARE §§ 16–103 and 16–151 A.R.S. UNCONSTITUTIONAL?

§ 16–151, subsec. A A.R.S. provides:

"Following each general election the registration of an elector who did not vote in the general election of that year shall be canceled and removed from the general county register by the county recorder."

§ 16–151, subsecs. B and C set forth the procedure whereby before 1 April following a general election the county recorders must give the non-voters removed by the procedures in subsec. A the opportunity to restore their registration by mail.

§ 16–103 A.R.S. provides:

"A person whose name appears on the general register of voters for the last preceding general state and county election and who has not been canceled out for failure to vote, or a person who voted in the last preceding general election for presidential electors only and has subsequently met the residency requirements for voting in all elections, or a person who has registered on or before the fiftieth day preceding a special primary, special general, special recall or other special election, shall, if otherwise qualified, be entitled to vote at any such special election authorized by law."

The statutes further direct that those who did not vote at the last general election and had their registration canceled must do something—either re-register in person or, if they still reside at the same address, return the postcard which the statute, § 16–151, subsec. B A.R.S., requires that the recorder send to them for that purpose. Those who did exercise their right to vote in the last election are still registered and may vote without doing anything further.

Two three-judge federal courts have upheld the decennial cancellation without written notice of all voting registrations. Judge Craig, speaking for the court in one case, stated:

"The initial question we must decide is whether there has in fact been a signifi-

cant encroachment on the right to vote. The answer is in the negative. No voter who re-registers will be denied or deprived of the right to vote. There are no changes in the qualifications of those who may re-register. The provision requiring all voters to re-register is the same type of provision that initially requires one to register when he becomes twenty-one or establishes residence in the county in order to become eligible to vote. * * *

* * * * * *

"Plaintiffs further assert that the failure to provide adequate notice of the change in the law operates to discriminate, in addition to the less economically fortunate against ethnic minorities and the uneducated, because these groups are less aware of the necessity to re-register. It is, indeed, questionable that these groups have substantially less access to modern communication media. Moreover, with respect to these groups, the problem is no different with respect to the re-registration requirement than with respect to the original registration requirement. Unequal awareness is a sociological fact which is present whenever there is *any* change in the law. Certainly every legislative act which has universal application to the entire citizenry is not pregnant with equal protection problems.

"Assuming the statute does result in some, albeit not significant, inconvenience to the lower income electorate, ethnic minorities and the uneducated, the Court is of the opinion, that there is a justified need for the legislation. Thus, the Court finds that the statute does not violate the equal protection clause.

"In the opinion of this Court, the decennial re-registration requirement of A.R.S. § 16–150(d), as amended, is a legitimate and necessary means of effectuating the state's interest in the purification of its electoral system." Johnson v. Marston, No. CIV 70–352 PHX WEC, 27 November 1970, judgment affirmed by the United States Supreme Court,

Johnson v. Marston, 401 U.S. 968, 91 S. Ct. 1216, 28 L.Ed.2d 320 (1971). See also Vinik v. Smyth, No. CIV 71–89 TUC WEC, 4 October 1971.

■ If the wholesale cancellation of all voters, including those who did vote in the last general election, can be upheld because of the state's interest in the purification of its election system, surely the cancellation of the registrations of those who have not voted at the last general election is not constitutionally infirm. The chances are greater that those who did not exercise the right to vote at the last general election had some legal impediment to their continued registration than those who did exercise that right. As to those still residing at their same place of residence, they need only return the postcard to keep their registration valid. As to those who have moved, they must re-register as they are required by law to do anyway, § 16–109 and § 16–110 A.R.S., and we do not find this burden constitutionally oppressive or discriminatory.

We therefore hold that the cancellation of the registration of voters who have failed to vote in the last election is not contrary to the Fourteenth Amendment of the United States Constitution or to the Constitution of the State of Arizona.

MUST THOSE WHO FAILED TO VOTE IN NOVEMBER 1972 BE ALLOWED TO VOTE IN THE RECALL ELECTION WITHOUT RE-REGISTRATION?

■ Having held as we have that the cancellation provisions of the Arizona statutes are constitutional and valid, it must follow that those whose registrations have been canceled because of their failure to exercise their right to vote, may not vote in the contemplated recall election until they have been re-registered by postcard or have re-registered themselves.

We see no constitutional reason for the court to direct that the county recorder deviate from existing law and keep on the registration rolls those voters who, for

whatever reason, failed to vote in the last general election and have failed to return the postcard if they are still living at the same address, or have failed to re-register if they are, in fact, still eligible to register and vote. The fact that there will be a burden upon the plaintiff-committee to re-register those voters whose registrations have been canceled and whom they believe will support their cause is not persuasive. At the present time, this burden falls equally on both the proponents of petitioner's position and those who oppose it.

Admittedly, because a recall election must, by statute, be held within 35 days of the filing of the petitions, § 19–209 A.R.S., and the eligible voters in such election are limited to those registered "on or before the fiftieth day preceding the * * * recall * * * election," § 16–103 A.R.S., may mean that some who do not re-register 15 or more days prior to the filing of the recall petition will not be able to vote in the recall election. However, since petitioners control the date upon which the petitions will be filed, they have no cause to complain.

## MUST THE RECORDER SEND OUT THE CARDS PRIOR TO THE ELECTION?

Our statute reads as follows:

"B. The county recorder shall, by April 1 of the year following a general election, send to each voter whose registration was canceled under subsection A of this section, a double postcard stating on the back of the mail-out card that this registration has been canceled for failure to vote. In addition, the mail-out card shall state that if the information on the return card is correct, he may sign and return the card within thirty days and his registration will be restored. The mail-out card shall also state that if the information on the return card is not correct, he must reregister. The return card shall give the information about the voter as it appears in the general register." § 16–151, subsec. B A.R.S., as amended.

■ There is no indication that the county recorders will fail to abide by this statute, and we see no reason why the trial court could or should order the recorders to send the cards out before the deadline established by statute. In this regard, it should be noted that the response to the application for special action indicated that in Maricopa County, 97,826 cards had been mailed and that as of 1 February 1973, 16,327 cards had been returned.

## WAS THE MOTION TO DISMISS CORRECTLY GRANTED?

Defendants made their motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, 16 A.R.S. Subsection (6) is for "failure to state a claim upon which relief can be granted."

■ In deciding motions to dismiss, all material allegations in the complaint are taken as true, Lakin Cattle Company v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966), Davis v. Aandewiel, 16 Ariz.App. 262, 492 P.2d 758 (1972), and in considering the sufficiency of the complaint to state a claim for relief, the prayer is not part of the complaint, Husky v. Lee, 2 Ariz.App. 129, 406 P.2d 847 (1965). Arizona's declaratory relief statute states in part as follows:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." § 12–1831 A.R.S.

■ The declaratory judgment act is remedial and is to be liberally construed. Planned Parenthood Center of Tucson, Inc. v. Marks, 17 Ariz.App. 308, 497 P.2d 534 (1972); Connolly v. Great Basin Insurance Co., 6 Ariz.App. 280, 431 P.2d 921 (1967). However, the declaratory judg-

ment act was not intended to constitute a fountain of legal advice for the court, Iman v. Southern Pacific Co., 7 Ariz.App. 16, 435 P.2d 851 (1968), and we have stated that declaratory relief will be based on the existing state of facts not those which may or may not arise in the future. Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District of Maricopa County, 102 Ariz. 69, 424 P.2d 819 (1967).

And:

"It is the court's view that the facts pleaded by appellant do not show a present existing controversy which permits the court to adjudicate any present rights. The allegations merely show an intent to do certain things in the future all of which are dependent upon future events and contingencies within control of the appellant. There are many contingencies or events which might occur before the last day before appellant may file his petition, e. g., the appellant may decide not to become a candidate for office between now and the time for filing petitions and papers, or he might not secure the required number of signatures to his papers and petitions as to entitle him to file for the office of Governor." Moore v. Bolin, 70 Ariz. 354, 358, 220 P.2d 850, 852 (1950). See also Merritt-Chapman & Scott Corp. v. Frazier, 92 Ariz. 136, 375 P.2d 18 (1962); Maricopa County v. Leppla, 89 Ariz. 220, 360 P.2d 227, 84 A.L.R.2d 1129 (1961).

We agree with the Court of Appeals:

" * * * The remedial purpose of the declaratory judgments act has been adverted to in Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P. 2d 205 (1940) and Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758 (1946). But, even though the act is remedial and is to be liberally construed, it is well settled that a declaratory judgment must be based on an actual controversy which must be real and not theoretical. (citations omitted) To vest the court with jurisdiction to render a judgment in a declaratory judgment action, the complaint must set forth sufficient facts to establish that there is a justiciable controversy. (citations omitted) A 'justiciable controversy' arises where adverse claims are asserted upon present existing facts, which have ripened for judicial determination. (citations omitted)." Planned Parenthood Center of Tucson, Inc. v. Marks, supra, 17 Ariz.App. 308 at 310, 497 P.2d at 536.

We find no abuse of the trial court's discretion. Petition dismissed.

HAYS, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

HOLOHAN, Justice (specially concurring);

In my view, the claim of the petitioners sets forth a justiciable issue, but I agree with the reasoning of the Court on the merits of the constitutional issues; therefore, I concur in the result reached.